RENDERED: MAY 15, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0696-MR

KENDALL PAUL SCOTT                                             APPELLANT


                       APPEAL FROM WARREN CIRCUIT COURT
v.                          HONORABLE JOHN GRISE, JUDGE
                         ACTION NO. 22-CR-01041


COMMONWEALTH OF KENTUCKY                       APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, EASTON, AND L. JONES, JUDGES.

ACREE, JUDGE: Appellant Kendall Scott was convicted of first-degree promoting contraband and for being a persistent felony offender. On appeal, Scott argues the trial court erred by: (1) denying his motion for directed verdict; (2) sentencing him to consecutive sentences in violation of a statutory cap; and (3) failing to instruct on a lesser included offense. We affirm.

# BACKGROUND

On September 1, 2022, Kendall Scott appeared late to a hearing in Warren Circuit Court. When he arrived, Scott was taken into custody by courtroom bailiffs and escorted down a hallway which led directly to the jail.

Once in the booking area, video footage shows Scott seated on a chair while various individuals, including officers and inmates, simultaneously occupy the space. While seated, he removes an item from his right pants pocket and places it into his right hand. Though the item is not entirely visible from any of the video camera angles, Scott testified this object was his block smartphone charger. He is then seen standing up, opening the door to the inmate dressing room, and taking a step inside. He believed he needed to go into the private room to undress for his strip search. He was mistaken and instructed to sit down.

When Scott and the officers entered the private room to conduct his strip search and dress him in jail clothing, they noticed a gray baggie just inside the door to the room. The baggie contained 3.39 grams of fentanyl.

Jailer Stephen Harmon was notified of the baggie and began investigating where it had come from. He reviewed security footage from the booking area and observed Scott taking something from his pocket and prematurely entering the private room. Because of this, it was believed Scott tossed the baggie into the room while being booked.

Scott denied having any drugs. He contends this is bolstered by the fact he was taken through a metal detector and searched for dangerous items prior to entering the courtroom.

Nevertheless, a Warren County grand jury indicted Scott on first-degree promoting contraband and being a first-degree persistent felony offender. A jury found him guilty on both counts and he was sentenced to 12 years' imprisonment. His directed verdict and judgment notwithstanding the verdict motions were unsuccessful.

The trial court ran the 12-year sentence consecutively with two prior sentences for which Scott was on probation for a total sentence of 22 years. Scott now appeals as a matter of right, presenting three separate arguments.

## ANALYSIS

### I. The trial court properly denied Scott's motion for a directed verdict.

We review a motion for directed verdict for a determination of whether "under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991).

Scott argues the trial court ought to have granted his directed verdict because the Commonwealth's case was based entirely on circumstantial evidence. The Commonwealth did not have any blood tests, urine tests, or other forensic

evidence conclusively linking the drugs to Smith, nor did it present testimony of bailiffs, court staff, or jail staff who saw Scott with the drugs.

While we recognize circumstantial evidence "has its limits," *Commonwealth v. Goss*, 428 S.W.3d 619, 626 (Ky. 2014), a conviction may indeed be based on circumstantial evidence "when that evidence is of such character that reasonable minds would be justified in concluding that the defendant was guilty beyond a reasonable doubt." *Thacker v. Commonwealth*, 115 S.W.3d 834, 839 (Ky. App. 2003) (citations omitted). Such a conviction may be sustained so long as "it would not be clearly unreasonable for a jury to find guilt beyond a reasonable doubt." *Goss*, 428 S.W.3d at 628 (quoting *Graves v. Commonwealth*, 17 S.W.3d 858, 862 (Ky. 2000). Conversely, a conviction obtained by circumstantial evidence cannot be sustained when the evidence "is as consistent with innocence as with guilt." *Collinsworth v. Commonwealth*, 476 S.W.2d 201, 202 (Ky. 1972).

Circumstantial evidence "must do more than point the finger of suspicion" though it need not "rule out every hypothesis except guilt beyond a reasonable doubt." *Goss*, 428 S.W.3d at 628 (internal quotation marks omitted).

We find the Commonwealth's circumstantial evidence to fall squarely beyond merely "pointing the finger of suspicion" notwithstanding that it might not "rul[e] out every hypothesis except guilt beyond a reasonable doubt." In the multi-angle video surveillance footage shown at trial, Scott is seen pulling an item out of

his pocket. The Commonwealth argues this was the baggie of fentanyl; Scott contends it was his phone charger. Even when enlarged, the brief moment where the item is visible is not clear enough to conclusively ascertain whether it is a baggie of drugs or a phone charger.

What is visible, however, is Scott's hand cupping the item after he removes it from his pocket. Then, after removing his shoes, he opens the door to the private room. After he exits, his right hand—which held the item—is no longer cupped around the item, but rather, it is open.

Scott testified that at some point in this interaction, he handed the phone charger to jail staff during the strip search. But this is not supported by the video. At no point does it appear that a phone charger is handed to any of the officers.

The trial court was required to view the evidence in the light most favorable to the Commonwealth, and in so doing, determined a jury could believe Scott pulled a baggie of fentanyl from his pocket and left it behind when, being the only person in the private room, he exited. We agree with the trial court's assessment. A jury could reasonably find guilt under these circumstances, and we cannot say it was clearly unreasonable for the jury to convict Scott. Accordingly, his motions for directed verdicts were properly denied.

## II. Scott's sentence did not violate a statutory cap.

Next, Scott argues his 12-year sentence, which was to run consecutively with his other sentences for a total of 22 years' imprisonment constituted an illegal sentence. As a question of statutory interpretation, we review this issue *de novo*. *Phon v. Commonwealth*, 545 S.W.3d 284, 290 (Ky. 2018) (citations omitted).

Scott was on probation for two other cases when he was convicted in this case and sentenced in those cases to a five-year sentence for first-degree trafficking fentanyl and of being a persistent felony offender from Butler County and a five-year sentence for second-degree burglary from Warren County. When he was convicted in the underlying matter, probation was revoked in both cases to impose a total 10-year sentence which was to run consecutive to the underlying jury's 20-year sentence. However, the trial court found the jury's sentence to be unduly harsh and modified it by remitting eight years from it. The result for Scott was a 12-year sentence in the underlying case which is to run consecutive to his previous 10-year sentence for a total of 22 years of incarceration.

Three statutes—Kentucky Revised Statutes (KRS) 532.110, KRS 532.080, and KRS 533.060—are at play here. A sentencing cap is set forth in KRS 532.110(1)(c), which states in relevant part:

> (1) When multiple sentences of imprisonment are imposed
>     on a defendant for more than one (1) crime, including

-6-

a crime for which a previous sentence of probation or conditional discharge has been revoked, the multiple sentences shall run concurrently or consecutively as the court shall determine at the time of sentence, except that:

. . . .

(c) . . . [T]he aggregate of consecutive indeterminate terms shall not exceed in maximum length the longest extended term which would be authorized by KRS 532.080 for the highest class of crime for which any of the sentences is imposed, except as described in KRS 533.060(2) or (3).

Next, KRS 532.080 states in relevant part:

(6) A person who is found to be a persistent felony offender in the first degree shall be sentenced to imprisonment as follows:

. . . .

(b) If the offense for which he presently stands convicted is a Class C or Class D felony, a persistent felony offender in the first degree shall be sentenced to an indeterminate term of imprisonment, the maximum of which shall not be less than ten (10) years nor more than twenty (20) years.

Finally, KRS 533.060 states in relevant part:

(2) When a person has been convicted of a felony and is committed to a correctional detention facility and released on parole or has been released by the court on probation, shock probation, or conditional discharge, and is convicted or enters a plea of guilty to a felony committed while on parole, probation, shock

probation, or conditional discharge, the person shall not be eligible for probation, shock probation, or conditional discharge and the period of confinement for that felony shall not run concurrently with any other sentence.

(3) When a person commits an offense while awaiting trial for another offense, and is subsequently convicted or enters a plea of guilty to the offense committed while awaiting trial, the sentence imposed for the offense committed while awaiting trial shall not run concurrently with confinement for the offense for which the person is awaiting trial.

Scott asserts in this Court, as he did at sentencing, that *Kimmel v. Commonwealth* precludes the trial court from imposing a sentence that, when run consecutively to his previously probated cases, exceeds 20 years' imprisonment. 671 S.W.3d 230 (Ky. 2023). We disagree.

Reliance upon *Kimmel* is misplaced. The facts and the analysis are clearly distinguishable from this case. First, *Kimmel* involved the application of KRS 533.060(3), not KRS 533.060(2) which applies in Scott's case. Second, in *Kimmel*, all the defendant's felony charges were tried together, whereas Scott committed new offenses while being on probation and all his previous cases were resolved prior to his conviction here. That triggered application of KRS 533.060(2).

We agree with the circuit court that *Blackburn v. Commonwealth*, 394 S.W.3d 395 (Ky. 2011), is controlling. In *Blackburn*, the Supreme Court held that

-8-

subsequent convictions cannot run concurrently with a paroled offense sentence. 394 S.W.3d at 401. We see no distinction in the law for one who is on probation. Additionally, the Supreme Court held the statutory cap set out in KRS 532.110(1)(c) does not apply to sentences from previous cases. *Johnson v. Commonwealth*, 553 S.W.3d 213, 219-20 (Ky. 2018).

In *Johnson*, the trial court ordered the defendant's sentence to run consecutively to all other sentences. Because Johnson had a prior conviction in which he was sentenced to ten years, the aggregate term of both sentences exceeded twenty years. *Id.* However, the Supreme Court expressly said KRS 532.110(1)(c) did not prohibit running defendant's sentences consecutively. *Id.* The Court held that KRS 532.110(1)(c) did not mandate that the aggregate of defendant's two consecutive sentences be capped at the twenty-year maximum, holding that KRS 532.110(1)(c) did not apply to sentences arising from separate indictments and trials. *Id.*

The same must be said of Scott's convictions. The Warren Circuit Court correctly determined that the sentence reduction set out in *Kimmel* was not applicable to Scott's sentence.

### III. Scott was not entitled to a lesser included instruction for criminal attempt.

Finally, Scott contends he should have been able to instruct the jury on a lesser included offense of attempted first-degree promoting contraband. He

argues "the jury could have believed [he] was guilty of attempted promoting contraband instead of promoting contraband as they could have believed he attempted to discard the contraband prior to being taken into custody." (Reply Br. at 2). Irrespective of Scott's misstatement of the law, he is wrong on the facts. He was already in custody at that time. As Scott correctly notes:

> Upon his arrival [to the courtroom], Mr. Scott was taken into custody by courtroom bailiffs. Mr. Scott was escorted down a secure hallway which led directly to the jail . . . . At the entry to the jail, Mr. Scott was given back his belongings and "handed off" to jail staff to be booked in.

(Appellant's Br. at 1) (citations to the record omitted). Regarding the question of Scott's custody, "The test is whether, considering the surrounding circumstances, a reasonable person would have believed he or she was free to leave." *Commonwealth v. Lucas*, 195 S.W.3d 403, 405 (Ky. 2006) (citing *Baker v. Commonwealth*, 5 S.W.3d 142, 145 (Ky. 1999)). At the time Scott allegedly discarded the baggie in the room, he was in the jail's booking area and surrounded by police officers after being escorted there by law enforcement. We are not at all inclined to say Scott believed he was free to leave at this time.

Regardless, the statute under which Scott was convicted does not implicate a question of custody. KRS 520.050 states a person is guilty of first-degree promoting contraband when "[h]e or she knowingly introduces dangerous contraband into a detention facility or a penitentiary[.]"

KRS 506.010, the criminal attempt statute, provides:

> (1) A person is guilty of criminal attempt to commit a crime when, acting with the kind of culpability otherwise required for commission of the crime, he or she:
>
>> (a) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as he or she believes them to be; or
>>
>> (b) Intentionally does or omits to do anything which, under the circumstances as he or she believes them to be, is a substantial step in a course of conduct planned to culminate in his commission of the crime.
>
> (2) Conduct shall not be held to constitute a substantial step under subsection (1)(b) of this section unless it is an act or omission which leaves no reasonable doubt as to the defendant's intention to commit the crime which he or she is charged with attempting.

Any alleged attempt to promote contraband was complete the minute Scott stepped into the jail with the baggie of fentanyl. The location within the detention facility is irrelevant and it does not matter that Scott was not yet in a cell when he discarded the baggie. The commentary to KRS 520.050 states it is "the presence of forbidden articles *within* a detention facility *where the inmate has access to them* that creates a risk to institutional security." (First emphasis in original) (second emphasis added). The statute merely required Scott to introduce the fentanyl into the jail. If the jury, after having reviewed the booking area

-11-

footage, determined Scott indeed discarded the baggie in the room, the jury was required to find Scott guilty of promoting contraband—not attempted promoting contraband. He succeeded in committing the crime and the evidence, taken as a whole, would not support an instruction he was merely attempting the crime. There was no basis for a jury instruction on the lesser included offense of attempt.

## **CONCLUSION**

In conclusion, we affirm Scott's conviction by the Warren Circuit Court and that court's order denying Scott's oral motion challenging sentencing, both date May 20, 2024.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Kayla D. Deatherage
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Ken W. Riggs
Assistant Attorney General
Frankfort, Kentucky